**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MARY A. MATTHEW** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.    1:26-cv-02213** |
| ) | |
| **UNIVERSAL BEAUTY PRODUCTS INC.** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

Plaintiff, Mary A. Matthew ("Plaintiff"), by and through her attorneys, the Law Offices of Michael T. Smith & Associates, P.C., in complaining of the Defendant, Universal Beauty Products Inc. ("Defendant"), states as follows:

## NATURE OF CASE

1.      Plaintiff brings this action against Defendant under the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("Section 1981") for Defendant discriminating against her on the basis of her race, and for terminating her employment in retaliation for her complaining of racial discrimination in the workplace.

## JURISDICTION AND VENUE

2.      Jurisdiction of this action is conferred upon the Court by 28 U.S.C. § 1331.

3.      Venue for this action is proper in the United States District Court for the Northern District of Illinois, Eastern Division, under 28 U.S.C. § 1391(b)(1)-(2) and (d) because the employment practices hereafter alleged to be unlawful were committed in the Northern District of Illinois and because Defendant's contacts are sufficient to subject it to personal jurisdiction in that district.

1

**PARTIES**

4.      Plaintiff is a Black/African-American individual, and is currently a resident of Carol Stream, Illinois.

5.      At all times relevant to the allegations herein, Defendant has been and is a domestic corporation organized under the laws of Illinois, doing business in Illinois and surrounding states.

**FACTUAL ALLEGATIONS**

6.      Plaintiff began her employment with Defendant in or around November 2021 in a temporary position as a packer.

7.      Plaintiff met or exceeded Defendant's reasonable performance expectations when such expectations were applied equally, regardless of race or history of protected activity.

8.      Due to Plaintiff's strong work performance during the first 6 months of her employment, Defendant promoted her from temporary packer to a permanent position as a customer service representative in or around May 2022.

9.      Prior to the events described herein, all performance evaluations Plaintiff received from Defendant were positive and she did not receive any discipline.

10.     From April 2023 through June 2023, Plaintiff was one of two Black customer service representatives out of approximately six. From June 2023 through Plaintiff's termination, she was the only Black customer service representative.

11.     Shortly after being hired, in or around April 2023, Customer Service Agent Jackie Solorio began harassing Plaintiff on the basis of her race in that she would call her, "The CEO's Black wife," make insulting comments regarding her complexion, and say that she did not understand how the CEO could like her due to him being Asian.

2

12. In or around April 2023, Plaintiff reported Jackie Solorio to Human Resources Representative Julie Puczek for the discriminatory comments being made about and to her on a regular basis.

13. It is Plaintiff's understanding that HR went directly to Ms. Solorio about the complaint before reporting the situation to Operations Manager Adriana Del Carmen and President Beatrice Calabrese.

14. Shortly after Ms. Del Carmen and Ms. Calabrese were notified of Plaintiff's complaint of race discrimination, they began harassing Plaintiff as well and contributing to the hostile work environment.

15. Between April 2023 and October 2023, Ms. Del Carmen, Ms. Solorio and Ms. Calabrese racially harassed Plaintiff on a daily basis, which caused Plaintiff extreme emotional distress and eventually led to an emergency room visit. Examples of this harassment include, but are not limited to:

   a. Making offensive comments regarding her hair;

   b. Making offensive comments regarding the hair of all Black individuals;

   c. Making offensive comments regarding her skin tone;

   d. Making offensive comments regarding her weight;

   e. Yelling at her and singling her out without cause in front of coworkers.

16. In or around August 2023, Plaintiff received her first written warning, which was issued without reasonable cause or justification.

17. Plaintiff went to human resources to complain of the discriminatory treatment she was receiving, about the unjustifiable written warning, and that she had received a written warning before ever receiving a verbal warning. No action was taken in response to Plaintiff's complaint.

18.     In or around September 2023, Plaintiff received a second written warning, which was again issued without reasonable cause or justification.

19.     Plaintiff again went to human resources to complain of the discriminatory treatment she was receiving and about the unjustifiable written warning. Again, no action was taken in response to Plaintiff's complaint.

20.     In or around October 2023, Ms. Solorio was promoted to Manager.

21.     During the weeks that followed, Plaintiff's workload, which was already excessive, was further increased when Ms. Solorio began assigning her with additional job duties.

22.     Ms. Solorio continued to subject Plaintiff to a racially hostile work environment, including but not limited to:

   a.   Assigning a task to Plaintiff, removing her from said task to work on a different task, then aggressively reprimanding her for not completing the original task in front of coworkers;

   b.   Telling Plaintiff, "Shut up, I am talking!" in front of coworkers;

   c.   Making false accusations against Plaintiff that she did not make against Non-Black employees;

   d.   Stating, "Black people like her have the ugliest hair that's why she braids it most of the time;"

   e.   Saying, "You don't have enough hair to leave it out without braiding," while laughing at her.

23.     On or about October 17, 2023, Ms. Solorio requested that Plaintiff meet her in the Human Resources office, where she was then told leave. Plaintiff asked for an explanation, and Ms. Solorio said that Human Resources Representative Julie Puczek can explain it to her.

4

24.     Ms. Puczek told Plaintiff that Ms. Del Carmen, Ms. Calabrese, and Ms. Solorio claimed that she does not do her job. Plaintiff asked what their claims were based upon, to which Ms. Puczek responded, "They are not listening, they don't care, they don't want you here."

25.     At that time, Ms. Puczek provided Plaintiff with a termination letter, which did not include a reason for termination and no further explanation was given to Plaintiff verbally. Plaintiff sought emergency medical treatment on this date due to a panic attack caused by Defendant's conduct.

## COUNT I
## (SECTION 1981 – RACE DISCRIMINATION)

26.     Plaintiff re-alleges paragraphs 1 through 25 and incorporates them as if fully set forth herein.

27.     Section 1981 prohibits employers from discriminating against individuals in the making, performing, modifying, and termination of contracts, including at-will employment contracts.

28.     By virtue of Plaintiff's and Defendant's employment relationship, an at-will employment contract was made by and between Plaintiff and Defendant.

29.     By its conduct alleged herein, Defendant discriminated against Plaintiff on the basis of her race when it subjected her to a hostile work environment and terminated her employment without legitimate cause or justification.

30.     As a result of Defendant's actions, Plaintiff has suffered lost wages, other economic losses, and emotional distress.

31.     Defendant's conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's right to be free from impermissible race discrimination.

32.     Plaintiff demands to exercise her right to a jury trial of this matter.

**PRAYER FOR RELIEF AS TO COUNT I**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant on Count I and that it:

a)      Award Plaintiff equitable/injunctive as appropriate;

b)      Award Plaintiff the value of all actual damages proven at trial;

c)      Order Defendant to reinstate Plaintiff's employment, or pay her front pay in the alternative;

d)      Award Plaintiff compensatory damages to make her whole, including but not limited to lost wages and damages for emotional distress;

e)      Award Plaintiff punitive damages;

f)      Award Plaintiff reasonable attorney's fees, costs and disbursements;

g)      Award Plaintiff any other relief this Court deems just and proper.

**COUNT II**
**(SECTION 1981 – RETALIATION)**

33.     Plaintiff re-alleges paragraphs 1 through 25 and incorporates them as if fully set forth herein.

34.     Section 1981 prohibits employers from retaliating against employees for complaining of race discrimination in the making, performing, modifying, and termination of contracts, including at-will employment contracts.

35.     By virtue of Plaintiff's and Defendant's employment relationship, an at-will employment contract was made by and between Plaintiff and Defendant.

36.     Plaintiff complained of race discrimination/racial harassment as alleged herein.

37.     By its conduct alleged herein, Defendant retaliated against Plaintiff for complaining of race discrimination/racial harassment when it subjected her to a hostile work

6

environment and terminated her employment without legitimate cause or justification.

38.     As a result of Defendant's actions, Plaintiff has suffered lost wages, other economic losses, and emotional distress.

39.     Defendant's conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's right to be free from impermissible retaliation.

40.     Plaintiff demands to exercise her right to a jury trial of this matter.

## PRAYER FOR RELIEF AS TO COUNT II

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant on Count II and that it:

a)     Award Plaintiff equitable/injunctive as appropriate;

b)     Award Plaintiff the value of all actual damages proven at trial;

c)     Order Defendant to reinstate Plaintiff's employment, or pay her front pay in the alternative;

d)     Award Plaintiff compensatory damages to make her whole, including but not limited to lost wages and damages for emotional distress;

e)     Award Plaintiff punitive damages;

f)     Award Plaintiff reasonable attorney's fees, costs and disbursements;

g)     Award Plaintiff any other relief this Court deems just and proper.

**MARY A. MATTHEW**

BY:**/s/ Michael T. Smith**
Michael T. Smith
Trial Attorney

Michael T. Smith #6180407IL
Law Offices of Michael T. Smith & Associates, P.C.
3030 Warrenville Road, Suite 450-42
Lisle, Illinois 60532
(847) 450-1103 | (847) 895-0626
msmith39950@aol.com | msmithlaw123@gmail.com

7